**UNITED STATES of America**

v.

**Charles M. RUSSELL, Appellant.**

**No. 80–1139.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 22, 1982.

Certiorari Denied June 7, 1982. See 102 S.Ct. 2909.

---

Before ROBINSON, Chief Judge, and WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Separate statement concurring in the judgment filed by Chief Judge SPOTTS-WOOD W. ROBINSON, III.

GINSBURG, Circuit Judge:

## INTRODUCTION

In this case, involving two paper bags seized from a car and opened without a warrant, we confront fluid, variously interpreted strands of Fourth Amendment law. The bags were uncovered in the course of a search the police conducted after they had probable cause to believe that drugs were in the car. As described by one of the police officers, the car was a "1979 Mustang, . . . a hatchback type, in that the trunk area is accessible to the passengers from the rear seat, or if the driver wants to lean over." Suppression Hearing Tr. at 12. In the course of the search, Russell, driver of the car, and the other three occupants were ordered out of the vehicle. Russell was held in custody at the scene and subjected to a personal search by a back-up officer. One of the two paper bags in contention was found under the front seat; it contained a handgun. The other, a large grocery-type bag covered by clothing, was seized from the hatchback; it contained, *inter alia*, packets of heroin.

In our initial decision, issued May 15, 1981,[1] in response to the government's plea for a "paper bag" or "unworthy container" exception to the warrant requirement, we cited our recent, en banc disposition in *United States v. Ross*, 655 F.2d 1159 (D.C. Cir.1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981). *Ross* noted the Supreme Court's admonitions that the reasonableness of a search does not obviate the need for a warrant and that the exceptions to the warrant requirement are few in number and well-contained;[2] the *Ross* decision held that the Fourth Amendment warrant requirement forbids the warrantless opening of a closed, opaque paper bag to the same extent that it forbids the warrantless opening of other closed, opaque containers, for example, a carryall of leather, nylon, or cotton, a silk purse, a plastic sack. We reasoned in *Ross* that paper bags or envelopes, whether marked Tiffany's or Five and Dime, could not be set apart from more sturdy or costly containers in a manner that makes either

1. *United States v. Russell*, 655 F.2d 1261 (D.C. Cir.1981).

2. 655 F.2d at 1168–69.

theoretical or practical sense. 655 F.2d at 1170.[3]

Relying on *Ross* to rule out creation of an "unworthy container" exception in *Russell,* we proceeded to determine whether an established exception to the warrant requirement justified opening either bag. 655 F.2d at 1264. The bag with the handgun, we believed, fell securely within the well-established "plain view" exception. The officer who came upon that container indicated in his testimony that he felt the outline of the gun as he grasped the paper bag. "Plain view," we think it safe to say, encompasses "plain touch," and probably "plain smell" as well. The idea is, the incriminating contents (contraband or evidence of crime) are "immediately apparent." *See* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5 (1978); *id.* § 7.2(e), at 156–57 & nn.102.29–.36 (Supp.1982); Y. Kamisar, *The "Automobile Search" Cases: The Court Does Little to Clarify the "Labyrinth" of Judicial Uncertainty,* in J. Choper, Y. Kamisar & L. Tribe, The Supreme Court: Trends and Developments 1980–1981, at 69, 104–05 (1982)).

The bag in the hatchback, however, was another matter. Apparently, it was not transparent, torn, or partially opened. No evidence indicated that incriminating contents could be inferred from the bag's outward appearance—its configuration, feel, or smell. *See Arkansas v. Sanders,* 442 U.S. 753, 764–65 n.13, 99 S.Ct. 2586, 2593 n.13, 61 L.Ed.2d 235 (1979); *Robbins v. California,* 453 U.S. 420, 426, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981); Y. Kamisar, *supra,* at 105 ("main thrust of [*Sanders*] footnote 13 is a distinction between containers that 'proclaim their contents' (... by their 'smell' *or* 'feel' *or* 'distinctive configuration') and those that do not") (emphasis in original). The "unworthy container" plea apart, the government suggested no exception to the warrant requirement that would justify the on-the-spot warrantless opening. Accordingly, we reversed the district court on this point, and held that the evidence found in the grocery bag seized from the hatchback should have been suppressed.

On July 1, 1981, some six weeks after our initial decision in this case, the Supreme Court decided *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, and *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744.[4] Taken together, these decisions distinguish (1) items, whether exposed or contained, found in a car passenger compartment from (2) containers, whether solid or insecure, placed in a car trunk. The former, it is now clear from the Court's *Belton* decision, fall within the "search-incident-to-arrest" exception to the warrant requirement. The latter, it appears from *Robbins,* are currently governed by the "automobile exception" or *Carroll* Doctrine,[5] as narrowed in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *Robbins.*[6] *See Virgin Islands v. Rasool,* 657 F.2d 582, 590 (3d Cir. 1981). Given the not fully anticipated elaborations provided by the Supreme Court, and in view of the government's pending petition for rehearing, we invited the parties to brief the question whether *Belton* requires modification of this court's May 15, 1981, judgment.

---

3. *But see* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.2, at 148–55 & nn. 102.1–.27 (Supp.1982).

4. *Belton* involved the search of a jacket seized from the back seat of a car immediately following defendant's arrest at the scene; *Robbins* involved the search of plastic-wrapped packages seized from a recessed luggage compartment under a floor rug in the rear of a station wagon. The search in *Robbins* occurred after the police had put the defendant in a patrol car. The Court upheld the warrantless search in *Belton,* but declared the warrantless search in *Robbins* violative of the Fourth Amendment.

5. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

6. The staying power of *Robbins* is in doubt. In granting certiorari in *Ross, supra,* the Court directed the parties "to address the question whether the Court should reconsider *Robbins.*" *Cf.* Y. Kamisar, *supra,* at 109 (forecasting application of the "automobile exception" or *Carroll* Doctrine to closed containers, regardless of their durability, found in vehicles).

In *Belton*, the Court supplied "a straightforward rule, easily applied"[7] in response to the question: "When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" 101 S.Ct. at 2861. Roger Belton challenged police action occurring immediately after he was ordered out of a car stopped for speeding, and placed under arrest for unlawful possession of marihuana. The police officer searched the passenger compartment and found on the back seat a black leather jacket belonging to Belton. The officer unzipped one of the jacket pockets and discovered cocaine inside.

Noting the unsettled state of lower court decisions, 101 S.Ct. at 2863, the Court established a "workable rule" which it derived from prior cases "suggest[ing] the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.'" 101 S.Ct. at 2864 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). Building upon that generalization, the Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

"It follows from this conclusion," the Court continued, "that the police may also examine the contents of any containers [whether they be open or closed] found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach." *Id.* "Container," the Court clarified, "denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 2864 n.4. The Court further specified that its "holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." *Id.*

While the expanded search-incident-to-arrest rule for car interiors announced in *Belton* does not apply to car trunks, the grocery-type bag in this case was found in the hatchback of the automobile Russell drove. The question at issue, then, is whether the *Belton* rule encompasses hatchbacks. *See id.* at 2869 (Brennan, J., dissenting). This question has already attracted scholarly comment. *See* Y. Kamisar, *supra*, at 94–95; 30 Crim.L.Rep. (BNA) 2065, 2066 (Oct. 21, 1981) (summarizing remarks of Prof. Yale Kamisar); Kamisar, *Fourth Amendment Hatchback*, Washington Post, Oct. 15, 1981, at A29. We note particularly the comment of an authority the Court cited in *Belton*, Professor Wayne R. LaFave, author of *Search and Seizure: A Treatise on the Fourth Amendment*. *Belton*, Professor LaFave observes, "rejects a case-by-case [approach] in favor of a standardized procedure" that police officers may follow routinely. 2 W. LaFave, *supra*, § 7.1, at 132 & n.9.2 (Supp.1982). In keeping with the *Belton* majority's intent "to avoid case-by-case evaluations of control," *id.* at 136, LaFave suggests that "passenger compartment," for purposes of the *Belton* rule, is properly read "as including *all* space reachable without exiting the vehicle." *Id.* (distinguishing, however, areas that would require "some dismantling of the vehicle," for example, door panel interiors, and other places to which there is "virtually *no* chance the arrestee could have acquired access") (emphasis in original).

A recessed luggage compartment in the back of a station wagon, on the other hand, has been described as "the functional equiv-

---

**7.** 101 S.Ct. at 2863; *see id.* at 2864 ("When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority.").

alent of a trunk." *Robbins, supra,* 101 S.Ct. at 2857 (Stevens, J., dissenting). The *Robbins* decision held that packages wrapped in opaque plastic and sealed with a tape strip could not be opened without a warrant after seizure from a station wagon luggage compartment. (The police gained access to the compartment by taking the keys from the ignition, opening the tailgate, lifting the floor rug, and pulling up a handle set flush in the deck.) But, as Professor Yale Kamisar points out, items in a hatchback are more accessible than those in the rear of a station wagon: "[M]any, if not most, courts would say they are within 'lunging distance' of even those in the front seats." Y. Kamisar, *supra,* at 94.

In the case before us, it does not appear that the hatchback was outside the control of the car occupants (as a car trunk or a recessed luggage compartment in the rear of a station wagon would have been) immediately before the process of arrest. *See Robbins, supra,* 101 S.Ct. at 2848–49 (Powell, J., concurring in the judgment). We therefore conclude, in light of the emphasis the Supreme Court placed in *Belton* on a workable definition of the area of a car subject to warrantless search in conjunction with a lawful custodial arrest,[8] that a hatchback reachable without exiting the vehicle properly ranks as part of the interior or passenger compartment. On that basis, we hold that the broadened search-incident-to-arrest doctrine declared in *Belton* covers Russell's case as well.[9]

---

8. 101 S.Ct. at 2863–64.

9. Our decision is focused narrowly and specifically on the precise question whether *Belton*'s rule and rationale encompass the hatchback in this case. No other question is framed or answered by the decision. We disavow any design "to lay down ... legal principles," and intend no "expansive declaration of the current status of the law governing searches of containers within vehicles." These broadsides apart, we are in full agreement with the views separately stated by Chief Judge Robinson. We share, particularly, Chief Judge Robinson's emphasis on the need, in this still-evolving area of the law, "for further enlightenment from Higher Authority." *See United States v. Martino,* 664 F.2d 860, 881 (2d Cir. 1981) (Oakes, J., concurring).

## CONCLUSION

In accordance with the foregoing, we vacate our May 15, 1981, decision to the extent that it reversed in part the judgment of the district court, and hereby affirm the district court's judgment in all respects.

SPOTTSWOOD W. ROBINSON, III, Chief Judge, concurring in the judgment:

In earlier condemning the search of the heroin-filled paper bag giving birth to this litigation, we adhered faithfully to this court's *en banc* decision in *Ross.*[1] The Supreme Court has now awarded a writ of certiorari in *Ross*[2] to deal further with the problem of warrantless searches of containers found in vehicles, an area in which its recent rulings in *Robbins*[3] and *Belton*[4] frequently crisscross in operation. The statement of questions upon which the writ was granted focused on that very problem, and the Court made known the possibility that *Robbins* will be reexamined.[5] Since *Belton* involved a warrantless search of the pocket of a jacket lying on the rear seat of an automobile—a search of a container of sorts—it is not inconceivable that the Court may clarify this area of Fourth Amendment jurisprudence in a way that impacts upon *Belton* as well.[6]

This is but one reason for caution against an expansive declaration of the current status of the law governing searches of con-

---

1. *United States v. Ross,* 210 U.S.App.D.C. 342, 655 F.2d 1159 (1981).

2. *United States v. Ross,* —— U.S. ——, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981).

3. *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).

4. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

5. See —— U.S. ——, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981).

6. See *Robbins v. California, supra* note 3, 453 U.S. at 434, 101 S.Ct. at 2850–2851, 69 L.Ed.2d at 756 (Powell, J., concurring in the judgment); *id.* at 444, 101 S.Ct. at 2855, 69 L.Ed.2d at 762 (Stevens, J., dissenting).

tainers within vehicles. In *Belton*, the Court has admittedly gone a long way toward establishing a clear and simple test by which the constitutionality of such searches may be measured, but even now fundamental questions in this troublesome area remain unanswered. How far does *Belton's* new variation of the search-incident-to-arrest doctrine extend? Is it grounded in assumptions about distinctive features of automobiles to such extent that the rule is limited to searches of automobiles?[7] Does it permit a defendant ever to argue that these generalized assumptions are inapplicable to his case because, for example, of the nature of a container searched, unorthodox physical characteristics of the vehicle—or, for that matter, of the defendant himself—or the time elapsing between arrest and search? Does the presence or absence of probable cause to search the vehicle affect the permissible scope of a search of containers within it?[8] I pose these questions only to emphasize that even *Belton's* boundaries are not yet well-defined, and that the rationale necessary to discern those outer perimeters has not yet been fully articulated.

It has been our wont to proceed gingerly in explicating newly-announced constitutional principles. This circumspection is especially appropriate when we may anticipate enlightenment by the High Court at an early date. I question the wisdom of any attempt at this juncture to lay down open-ended legal principles regarding container-within-vehicle searches. I therefore limit my concurrence to the judgment today announced by the court.

In so doing, I underscore several factual elements of this case that lead me to the conclusion that the search of the paper bag should be upheld. The bag was not, according to the record, fastened or transported in any way that rendered it even briefly impenetrable by occupants of the vehicle. It was not insulated, by partition or other stationary obstacle, from access by the passengers. The police officers had probable cause to believe that the car contained contraband, and they conducted the search immediately after the four occupants were ordered to get out. Given these facts I am satisfied that the instant search was undertaken in circumstances sufficiently close to those in *Belton* to be adjudged constitutional under even the narrowest reading of that decision.

UNITED STATES of America

---

**7.** See *New York v. Belton, supra* note 4, 453 U.S. at 469, 101 S.Ct. at 2869, 69 L.Ed.2d at 781 (Brennan, J., dissenting).

**8.** Several Justices have suggested that the "automobile exception" should be extended to cover examination of all objects within a vehicle that police have probable cause to search. See, *e.g., Robbins v. California, supra* note 3,

453 U.S. at 436, 101 S.Ct. at 2851, 69 L.Ed.2d at 756–757 (Blackmun, J., dissenting); *id.* at 444–53, 101 S.Ct. at 2855–2859, 69 L.Ed.2d at 762–767 (Stevens, J., dissenting); *New York v. Belton, supra* note 3, 453 U.S. at 463, 101 S.Ct. at 2865, 69 L.Ed.2d at 775–776 (Rehnquist, J., concurring).