Leslie C. MANN, An Infant, by his Parent and Natural Guardian, Diane PARENT, Plaintiffs,

v.

Steven MEACHEM, Defendant.

No. 95–CV–0590.

United States District Court, N.D. New York.

June 19, 1996.

---

Dennis C. Vacco, Office of Attorney General, Albany, New York (David B. Roberts, Asst. Atty. Gen., of counsel), for defendant.

Antokol & Coffin, Schenectady, New York (Cynthia R. Amrhein, of counsel), for plaintiffs.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND AND FACTS

The plaintiff, Leslie C. Mann, a minor, by and through his parents, filed a Complaint on May 1, 1995, alleging violations of 42 U.S.C. § 1983 for alleged violations of the plaintiff's Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendment rights. The plaintiff has also alleged pendent state law claims.

The plaintiff moved before the Magistrate Judge to consolidate this action with *Mann v. County of Saratoga*, 94–CV–0142. That case was predicated upon the same facts and circumstances giving rise to this action. On February 16, 1996, the plaintiff's motion was denied.

The defendant, New York State Trooper Steven Meacham, was deposed as a nonparty witness in *Mann v. County of Saratoga*, 94–CV–0142. According to the deposition of the defendant Meacham, the claims alleged herein arise out of an incident that occurred on December 13, 1992. On that date, members of the Saratoga Sheriff's Department and New York State Troopers went to the home of Dan Hollenbeck at approximately 5:30 a.m. in response to a 911 call. There they learned that a fight had occurred in the near vicinity of the plaintiff's home the night before. Meacham Dep. at 9–10. An individual named Daniel Lyman had been assaulted and rendered unconscious. Meacham Dep. at 9. Lyman was still unconscious and was bleeding from the head when the defendant Meacham arrived at the home of a Dan Hollenbeck. *Id.* The defendant learned that an individual named Michael Bradt, allegedly a friend of the plaintiff, had been involved in the fight at the plaintiff's home. Meacham Dep. at 10. The defendant determined that a felony assault had occurred resulting in serious injuries, and he commenced a further investigation, i.e., went to the plaintiff's home and tried to find Bradt. Meacham Dep. at 11–12.

On the way to the plaintiffs home, the defendant encountered and requested accompaniment from Saratoga Sheriff's Deputy Doherty. Meacham Dep. at 15–17. The two officers approached the plaintiff's trailer home door, knocked, and the plaintiff answered. Meacham Dep. at 22–23. The plaintiff invited the defendant inside. Meacham Dep. at 25. Two young woman were seated in the trailer's main room, and no one else was visible to the defendant. Meacham Dep. at 24–25. In response to the defendant's questions, the plaintiff stated repeatedly, in sum and substance, that his parents were not at home, that no other individuals other than those present in the main room were in the trailer, that he did not know Michael Bradt, that he did not know where Michael Bradt lived, and that he knew nothing about a fight in front of his home on the previous night. Meacham Dep. at 25.

The defendant then heard noises from behind an interior door that lead to a bedroom, and noticed the door move. Meacham Dep. at 26. The defendant looked behind the door and observed an individual who identified himself as Michael Bradt. Meacham Dep. at 27. The defendant then asked Bradt to extend his hands to be placed in handcuffs. Meacham Dep. at 31. Bradt complied with the defendant's request. Meacham Dep. at 28. However, the plaintiff began to yell obscenities and, in general, object to the arrest of Bradt. Meacham Dep. at 28–29. There was no physical contact between the defendant and the plaintiff. Meacham Dep. at 31. Nevertheless, the defendant asked Deputy Doherty to remove the plaintiff from the trailer. Meacham Dep. at 32. The defendant believed that the plaintiff was hindering his attempted arrest of someone suspected of committing a felony. Meacham Dep. at 32.

The defendant then removed Bradt from the trailer, and placed him in the defendant's vehicle. Meacham Dep. at 34. Deputy Doherty placed the plaintiff in the Deputy's vehicle for transport to the Trooper Barracks in Malta, New York. Meacham Dep. at 32. At this point, the plaintiff's parents emerged from the trailer. Meacham Dep. at 36. The plaintiff's parents were instructed as to what

had taken place, and told to go down to the Malta Barracks. *Id.* The plaintiff was brought to the Barracks and held until the condition of the victim was learned. Meacham Dep. at 37, 41–43.

At the Barracks, the defendant learned that the victim, Lyman, was not as seriously hurt as believed, and that he would soon be released from the hospital. Meacham Dep. at 41. The defendant also learned that the plaintiff was a minor. Meacham Dep. at 42. Given what the defendant had just learned, the defendant decided not to charge the plaintiff and he was released. Meacham Dep. at 42–43.

At no time during the course of these events did the plaintiff complain of any violent or painful physical treatment by any officer. Meacham Dep. at 36. At no time did the defendant notice any evidence of physical treatment resulting in injuries to the plaintiff. Meacham Dep. at 39.

On July 9, 1993, in the presence of counsel, the plaintiff stated that a Saratoga Sheriff's Department Deputy, not the defendant had choked him, while removing him from the trailer home. July 9, 1993 Statement of Leslie Mann. Specifically, in response to the question "Trooper Meacham never put his hands on you?" the plaintiff responded "No." July 9, 1993 Statement of Leslie Mann.

The plaintiff claims at this time, through an attorney's affidavit and the "Fact" section of a Memorandum of Law in opposition to the defendant's motion, neither of which makes citations to admissible evidence, that the defendant and at least one other officer made an unauthorized entry into the plaintiff's home. The plaintiff also claims that he was threatened by the Trooper and/or officer with physical harm. The plaintiff also claims that the Trooper and/or officer grabbed the plaintiff by the neck, dragged him from his home, and nearly rendered the plaintiff unconscious from lack of air. The plaintiff then makes a final claim that he was "maliciously, willfully and violently beat[en] ... as well as choke[d], push[ed] and shove[d]...." Plaintiff's Memorandum of Opposition at 4.

A 42 U.S.C. § 1983 action based on the same facts at issue herein was commenced in this Court on February 3, 1994. *Mann v. County of Saratoga*, 94–CV–0142. That case was settled on March 12, 1996. The defendant had moved to stay this action pending a trial in *Mann v. County of Saratoga.* Of course, the settlement moots that request, and the court will examine the issues presented.

## II. DISCUSSION

The plaintiff, Leslie C. Mann, a minor, by and through his parents, filed a Complaint on May 1, 1995, alleging violations of 42 U.S.C. § 1983 for alleged violations of the plaintiff's Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendment rights. The plaintiff has also alleged pendent state law claims for intentional infliction of emotional distress, assault, and battery. The defendant has moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(7), and in the alternative for summary judgment as to all claims predicated on the Fourth Amendment.

### A. Standard For A Motion To Dismiss Pursuant To Rule 12(b)(6), Or In The Alternative For Summary Judgment Pursuant To Rule 56

On a dismissal motion for failure to state a claim the general rule is that the allegations in a plaintiff's complaint are deemed to be true and must be liberally construed in the light most favorable to the plaintiff. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A complaint should not be dismissed unless it appears beyond a reasonable doubt that the plaintiff cannot in any way establish a set of facts to sustain his claim which would permit relief. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

If on a motion made pursuant to Rule 12(b)(6) "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56 ..." Fed.R.Civ.P. 12(b)(6). A motion for summary judgment should be granted "if the pleadings ... together with the affidavits, if any, show that

there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The non-movant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 516 (2d Cir.1994) (*quoting*, 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed. 1983)).

■ There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (*quoting, Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). All ambiguities must be weighed in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Discovery is nearly completed in this case, and affidavits have been submitted. Accordingly, the Court will treat this motion as one for summary judgment. It is with the foregoing standards in mind that the Court now examines the issues presented.

### B. Local Rule Of Civil Procedure 7.1(f)

Pursuant to Local Rule of Civil Procedure 7.1(f) ("L.R. 7.1(f)")

**The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue, with specific citations to the record where the factual issues arise. All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party.**

■ No separate statement in compliance with L.R. 7.1(f) has been provided by the plaintiff. Therefore, the Court must deem, as admitted those facts set forth in the defendant's 7.1(f) statement. Accordingly, the Court grants the defendant's motion to dismiss all Fourth Amendment based claims.

Notwithstanding the foregoing, the Court will examine the defendant's summary judgment motion as if a L.R. 7.1(f) statement had been provided as mandated by the Local Rules. For the reasons that follow, the Court finds that even if the plaintiff had complied with L.R. 7.1(f), the Court would have granted summary judgment based on the failure of the plaintiff to submit any admissible facts raising a factual issue as to any of the claims asserted.

### C. Failure To Join Necessary Party

■ The defendant argues that the plaintiff has filed this action because the deadline for joining parties in *Mann v. County of Saratoga*, 94–CV–0142 has expired, and the plaintiff realizes that the defendant herein is a proper party to that action. The defendant further argues that by proceeding solely against the defendant Meacham, without joining the Saratoga Sheriff's Department officer who accompanied the defendant Meacham to the plaintiff's residence constitutes a failure to join a necessary party, and merits dismissal of the Complaint. The Court disagrees.

Rule 19 of the Federal Rules of Civil Procedure requires that

[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest.

No such interest has been asserted by the Saratoga Sheriff's department officer, or on his behalf by the defendant Meacham. Moreover, given that the officer not a party to this action has a mere possibility of liability, and any such liability is tort liability, it cannot be said that the Saratoga officer is necessary within the meaning of Fed. R.Civ.P. 19. *See Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) (ruling in context of joint tortfeasors). Accordingly, the Court denies the defendant's motion to dismiss the Complaint on the basis of a failure to join a necessary party.

### D. Claims Pursuant To 42 U.S.C. § 1983

 To state a valid civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the United States Constitution or the laws of the United States. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Costello v. Fairfield,* 811 F.2d 782 (2d Cir.1987). The Court also notes that federal courts are barred from applying a "heightened pleading standard" in civil rights cases under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (March 3, 1993) (addressing municipal liability under *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Thus, the court's initial inquiry is merely directed to whether the allegations in the plaintiff's complaint constitute a statement of claim under Rule 8(a), which calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). After determining that the plaintiff has stated a viable claim, the Court then must examine whether there exists a material question of fact, in accordance with the standards set forth above.

### E. Fourth Amendment Claims

The defendant argues that the plaintiff has alleged three claims predicated upon the Fourth Amendment: First, the plaintiff alleges a wrongful entry into his home; Second, the plaintiff alleges an illegal search of the home; and Third, the plaintiff alleges use of excessive force in effectuating his removal from his home. The plaintiff has stated that the claims are for an illegal search and unlawful arrest. The Court, upon review of the plaintiff's papers, finds that the plaintiff has supported each alleged claim by arguing that the defendant unlawfully entered the plaintiff's home. The plaintiff also seems to argue that the discovery of Michael Bradt, not a party to this case, was not evidence seized pursuant to the "plain view" doctrine, and thus, the product of an illegal search.

#### 1. Alleged Wrongful Entry

 The defendant argues that he did not violate the plaintiff's Fourth Amendment rights as a matter of law. Notwithstanding that assertion, the defendant does concede that the entry into the plaintiff's home raises a material question of fact. The Court disagrees. After a review of the admissible facts before the Court, the Court finds that as a matter of law, the defendant did not unlawfully enter the plaintiff's home.

 The Supreme Court consistently has held that warrantless searches and seizures in a home violate the Fourth Amendment absent consent or exigent circumstances. *See, e.g., United States v. Karo,* 468 U.S. 705, 714–715, 104 S.Ct. 3296, 3302–03, 82 L.Ed.2d 530 (1984); *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (arrest warrant inadequate for search of home of a third party); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (warrantless arrest of

suspect in his home unconstitutional). The Fourth Amendment guarantees an individual the right to be secure against forcible entry of his home save in exceptional circumstances. *See generally Payton,* 445 U.S. at 584–90, 100 S.Ct. at 1379; *United States v. Manning,* 448 F.2d 992, 1000–02 (2d Cir.) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972).

 In this case, the entry into the plaintiff's home was not pursuant to a warrant. In order to determine whether the officers' warrantless entry into the plaintiff's home was permissible under the Fourth Amendment, the Court is required to determine whether the plaintiff's alleged consent was voluntary. *U.S. v. Uribe–Velasco* 930 F.2d 1029, 1032 (2d Cir.1991). The question as to whether the plaintiff's consent to the defendant's entry was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and is a matter which the defendant has the burden of proving. *Id.,* at 222, 93 S.Ct. at 2045, *citing, Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). If the consent is found to be voluntary, the search, or in this case entry, is exempted from the requirements of both a warrant and probable cause. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

 In the instant case, the defendant has testified under oath that he arrived at the plaintiff's home, knocked on the door, that the plaintiff answered, and that the plaintiff invited him into the home. The only indication to the contrary is in the plaintiff's Complaint and legal memorandum. In each, it is alleged that the defendant forcibly entered the home. The Complaint, however, predominantly is comprised of vague and conclusory statements, many of which are made "on information and belief." Moreover, the facts stated in a legal memorandum are not sworn. Accordingly, the Court declines to consider the allegations in the Complaint or the legal memorandum in opposition to the present motion. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980), *explained,* 475 U.S. 469, 477, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986) (facts stated in legal memoranda insufficient to defeat summary judgment); *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995) (same); *First Nat. Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968) (vague and conclusory facts in Complaint may not be relied on to defeat summary judgment). Moreover, the sworn statement of the plaintiff, taken in connection with the *Mann v. Saratoga Sheriff's Dept.* case, referred only to the alleged excessively forceful removal of the plaintiff from the home. Conspicuously omitted from the plaintiffs allegations of wrongdoing is any discussion of a forced and unconsented to entry. Since the plaintiff has submitted no admissible facts to the Court that contradict the sworn statement of the defendant, the Court finds that as a matter of law the defendant entered the plaintiff's home with the voluntary consent of the plaintiff.

### 2. Alleged Use Of Excessive Force

The plaintiff concedes that the Complaint does not allege a Fourth Amendment claim for the use of excessive force.

### 3. Alleged Illegal Search

#### i. The application of the plain view doctrine does not go far enough.

The defendant argues that the plaintiff cannot maintain a claim against him for an unlawful search of the plaintiff's home, during which he discovered Michael Bradt, the basis for the plaintiff being brought to the Trooper barracks in connection with a possible charge of Hindering Prosecution in the Third Degree, because he was unlawfully in the plaintiff's home. The Court has found that as a matter of law, the defendant was lawfully in the defendant's home. However, the Court must look to additional factors to

determine if the search was lawful. The defendant argues the lawfulness of the search on the theory of the "plain view" doctrine. The Court finds that there were exigent circumstances that justified the defendant's search.

Because the defendant Meacham was lawfully on the premises, the "plain view" doctrine would have allowed him to seize any evidence in plain view without violating the plaintiff's Fourth Amendment rights. *U.S. v. Trzaska,* 866 F.Supp. 98, 102 (E.D.N.Y.1994). The plain view doctrine "merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property." *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971). The Supreme Court has stressed that analysis of Fourth Amendment issues involves " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (*quoting, Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)).

■■■■ Nevertheless, the Second Circuit recognizes three elements that must be satisfied before the doctrine will justify an evidentiary discovery.[1] "First, the initial intrusion by the police officer must be lawful so that he can justify being in a position to make his discovery. Second, the discovery [of evidence] must be inadvertent. Third, the police must have had probable cause to believe that the item seized was evidence of a crime." *United States v. Moreno,* 897 F.2d 26, 32 (2d Cir.) (citations omitted), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); *United States v. Bonfiglio,* 713 F.2d 932, 936 (2d Cir.1983). *Ruggiero v. Krzeminski,* 928 F.2d 558, 561 (2d Cir.1991), *aff'd,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Put another way, the defendant may make a warrantless seizure under the plain view doctrine if he is " 'lawfully located in a place from which the object can be plainly

seen.' " *Bradway v. Gonzales,* 26 F.3d 313, 319 (2d Cir.1994) (*quoting, Horton v. California,* 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)).

■■■■ The defendant argues that the "plain view" related to the defendant's seeing the door, behind which Bradt was standing, move. That "sight" coupled with the plaintiff's misrepresentations concerning the whereabouts of Bradt allegedly gave the defendant probable cause to look behind the partially-opened door. The argument, however, can be assailed from a couple of different angles. First, the defendant did not know that the plaintiff had misrepresented the location of Bradt until after he had searched behind the door and identified whatever or whomever caused its movement. Second, the defendant has taken too literal a view of "plain view." The plain view doctrine is not limited to the sense of sight alone. *See United States v. Mankani,* 738 F.2d 538 (2d Cir.1984) (hearing); *United States v. Russell,* 670 F.2d 323 (D.C.Cir.), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982) (touch); *United States v. Lovell,* 849 F.2d 910 (5th Cir.1988) (smell). Rather, an ever widening definition of "sensory testimony" can bring one within the plain view doctrine. However,

> plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle … that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses … may establish the fullest possible measure of probable cause. But … police may not enter and make a warrantless search [absent exigent circumstances.]

*Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039.

### ii. The defendant conducted a warrantless search pursuant to exigent circumstances.

■■■ The critical issue in the analysis of this Fourth Amendment inquiry is not whether the sounds that the defendant heard

---

**1.** Such a discovery or seizure of evidence is not a search if discovered inadvertently and pursuant to the plain view doctrine. *See generally, Coolidge, supra.*

**632**

from the room adjoining the one in which he stood or the movement of the door were in plain view—it is clear that they were. Rather, the inquiry turns on whether there were exigent circumstances pursuant to which the defendant was permitted to conduct a warrantless search of the adjoining room. *Id.*

■ It is well-settled that the warrant requirement of the Fourth Amendment must yield in those situations in which exigent circumstances require law enforcement officers to act without delay. *See, e.g., Payton v. New York,* 445 U.S. 573, 585–86, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639 (1980). The Second Circuit has adopted six factors as guideposts for determining the existence of exigent circumstances: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed;" (3) "a clear showing of probable cause ... to believe that the suspect committed the crime;" (4) "strong reason to believe that the suspect is in the premises being entered;" (5) "a likelihood that the suspect will escape if not swiftly apprehended;" and (6) the peaceful circumstances of the entry. *United States v. MacDonald,* 916 F.2d 766, 769–70 (2d Cir.1990), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991) (*quoting, Dorman v. United States,* 435 F.2d 385, 392–93 (D.C.Cir.1970)). This Circuit has repeatedly emphasized that these factors "are merely illustrative, not exhaustive, and the presence or absence of any one factor is not conclusive." *United States v. Medina,* 944 F.2d 60, 68 (2d Cir.1991), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); *see, also MacDonald,* 916 F.2d at 770. Applying these six factors, the Court concludes that as a matter of law there were exigent circumstances justifying the defendant's search of the adjoining room.

First, the plaintiff and the individual suspected of committing the attack precipitating the defendant's investigation were involved in a violent assault, believed at that time to be a felony. Second, the defendant had probable cause to believe that the plaintiff was lying to him about the whereabouts of Bradt, a person suspected of committing a felony, given

that the plaintiff had stated that no one else was in the house, such statement having proven untrue. Moreover, the defendant had knowledge from other sources that the plaintiff knew Bradt, that a fight had occurred at the plaintiff's home, and that Bradt was probably at that location, all of which the plaintiff denied, but which was contradicted by the ostensible presence of an individual in an adjoining room. Third, the defendant had a strong indication that Bradt was on the premises. Fourth, the defendant faced a real possibility of Bradt's escape if not apprehended immediately given the severity of the crime, and the apparent deception aimed at avoiding arrest. Finally, the defendant was peacefully and lawfully present.[2] Given the presence of most of the *Dorman* factors, it is clear to the Court that the defendant faced exigent circumstances sufficient to permit a warrantless search of the adjoining room, from which the defendant heard noises and observed movement. Accordingly, the plaintiff's Fourth Amendment claim, sounding in illegal search of the plaintiff's home must be dismissed.

### F. Fifth Amendment Claim

■ The Fifth Amendment of the U.S. Constitution provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law...." In numerous decisions, the Supreme Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. *E.g., Hampton v. Mow Sun Wong,* 426 U.S. 88, 100, 96 S.Ct. 1895, 1903–04, 48 L.Ed.2d 495 (1976); *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954)." *Vance v. Bradley,* 440 U.S. 93, 95 n. 1, 99 S.Ct. 939, 942 n. 1, 59 L.Ed.2d 171 (1979). The plaintiff has alleged a Fifth Amendment due process claim against a state employee. As the plaintiff has alleged no claim against a federal entity, the claim must be dismissed.

**2.** There is no indication that the plaintiff or Bradt were armed.

## G. Sixth Amendment Claim

 It is clear that the Sixth Amendment right to counsel does not attach until the initiation of adversary judicial criminal proceedings, *see Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194 (7th Cir.1985), *citing, Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), and under New York law such proceedings commence upon the filing of an accusatory instrument with the court, *see O'Hagan v. Soto,* 725 F.2d 878 (2d Cir.1984). Here, there is no factual dispute that at the time of the interrogation/interview of plaintiff no formal charges had been filed, consequently his right to counsel had not yet attached. *See Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 2398–99, 110 L.Ed.2d 243 (1990) (where no charges had been filed against the subject of interrogation Sixth Amendment precedents not applicable). Moreover, it is uncontradicted that the defendant was not present when the alleged Sixth Amendment violation occurred. Therefore, summary judgment should be granted to defendant as to the Sixth Amendment claim.

## H. Eighth Amendment Claims

 The Eighth Amendment prohibits the imposition of "cruel and unusual punishment." U.S. Const. Amend. VIII. This provision to the Federal Constitution has been made applicable to the states through the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 1421, 8 L.Ed.2d 758 (1962). The Eighth Amendment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) *citing, Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). In this context, it has

been determined that unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

 The Supreme Court has held that the Eighth Amendment prohibition against cruel and unusual punishment is applicable only to convicted criminals.[3] *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083–84, 89 L.Ed.2d 251 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'") *see also Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16 (1979) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").

 Notwithstanding its prior holdings, the Supreme Court has recognized that conduct imposed on a *non-convicted* person may warrant Eighth Amendment scrutiny if such conduct constitutes "punishment." *Bell* at 538, 99 S.Ct. at 1873–74. The Court has developed a Two-pronged test for determining if conduct is punishment and thus subject to Eighth Amendment scrutiny. "Absent a showing of an expressed intent to punish . . . that determination generally will turn on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Bell v. Wolfish,* 441 U.S. 520, 538, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979) *quoting, Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, 83 S.Ct.

---

**3.** The Eighth Amendment has been evoked in cases not dealing with convicted criminals. *See Ingraham v. Wright,* 498 F.2d 248 (1974) (corporal punishment by school officials does not violate the Eighth Amendment), *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (pre-trial detainees). However, the determinative question in these cases was not whether alleged violations of the Eighth Amendment constituted cruel and unusual punishment, but whether the alleged violations even constituted

punishment. Claims brought by plaintiffs, who have not been convicted of a crime, alleging Eighth Amendment violations should properly be brought under the Due Process clause of the Fourteenth Amendment. *See Bell* at 535 n. 16, 99 S.Ct. at 1872 n. 16 ("Where the State seeks to impose punishment without [an a formal adjudication of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.")

554, 567–68, 9 L.Ed.2d 644 (1963). In other words, (1) was there a legitimate purpose for engaging in the conduct complained of,[4] and (2) was the complained of conduct excessive in relation to the legitimate purpose. As stated in *Bell*, in connection with a pretrial detention, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment," and is not subject to Eighth Amendment analysis. *Bell* at 539, 99 S.Ct. at 1874.

The plaintiff herein was never arrested, nor was he convicted of any crime. Accordingly, the Court must look to the Supreme Court's two-pronged test to determine whether or not to grant the defendant's motion for summary judgment as to the Eighth Amendment claim. There is no evidence in the instant case tending to show that defendant intended to punish the plaintiff. The facts show that the plaintiff was taken into custody because the defendant believed that he was hindering the arrest of someone suspected of committing a felony. (Meacham Dep. at 32). This is a legitimate governmental objective. Moreover, the defendant merely asked another officer to remove the plaintiff, but did not participate in that removal. Even if the defendant had been the one who took the plaintiff into custody, it is clear that he would have acted pursuant to a legitimate governmental objective.

As to whether or not the conduct complained of was excessive, the plaintiff (and defendant) specifically has stated that the defendant never placed his hands on him. In addition, the plaintiff was released from custody as soon as the defendant learned that the assault was not serious enough to constitute a felony under New York law and that the plaintiff was a minor. There is no evidence that the defendant unnecessarily and wantonly inflicted pain, physical or otherwise, on the plaintiff. Accordingly, the plaintiff's Eighth Amendment claim must be dismissed.

4. Pretrial detention in *Bell*.

### I. Ninth Amendment Claims

The plaintiff alleges a Ninth Amendment violation as a basis for a claim under 42 U.S.C. § 1983. Section 1983 claims must be based upon a specific constitutional guarantee. *Rini v. Zwirn*, 886 F.Supp 270, 289 (E.D.N.Y.1995). The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Ninth Amendment is recognized as a rule of construction and does not protect any specific right. *Id. citing*, Laurence H. Tribe, American Constitutional Law § 11–3, at 774–775 (2d ed. 1988). Therefore, the plaintiff's Ninth Amendment Claim must be dismissed.

### J. Tenth Amendment Claims

The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." This amendment was adopted for the specific purpose of preserving Federalism and state sovereignty. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 568, 105 S.Ct. 1005, 1027, 83 L.Ed.2d 1016 (1985) ("Indeed, the Tenth Amendment was adopted specifically to ensure that the important role promised the states by the proponents of the Constitution was realized.") (J. Powell, Dissenting). "There is nothing in the history of [the Tenth Amendment's] adoption to suggest that it was more than declaratory of the relationship between the national and state government . . ." *United States v. Darby*, 312 U.S. 100, 124, 657, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941). The Tenth Amendment does not protect any specific personal right nor does the plaintiff state any specific right guaranteed by the Tenth Amendment which the defendant violated. Therefore, the plaintiff's Tenth Amendment must be dismissed.

### K. 42 U.S.C. § 1985 Conspiracy Claim

The plaintiff makes a single reference to 42 U.S.C. § 1985 liability in paragraph 1 of the Complaint. There are no

factual allegations in that paragraph, and nowhere else in the Complaint or in any document are there alleged facts setting forth a conspiracy by a person with personal knowledge of the facts. Given the, at best, cursory and conclusory allegations contained in the Complaint with regard to the § 1985 conspiracy claim, the Court finds that the plaintiff has failed to state a claim upon which relief can be granted.

■■■ While the Court recognizes that a § 1983 claim may not be held to a "heightened pleading standard," *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (March 3, 1993), a Complaint must nevertheless contain more than merely broad based, conclusory statements. *See Spear v. West Hartford,* 954 F.2d 63, 68 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992) ("[t]o state a civil rights claim under § 1983, a Complaint must contain specific allegations of facts which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983."). Thus, as the Second Circuit has held, "complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).[5]

■■■ The foregoing analysis does not constitute a heightened pleading standard, *per se.* Requiring the plaintiff to surpass the liberal pleading standard of Rule 8(a), on the contrary, requires the plaintiff to allege more than merely bald conclusory statements which comport with the notice requirements under the Federal Rules of Civil Procedure so as to "give the defendant fair notice of what the claim is and *the grounds upon which it rests."* *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (emphasis added). Therefore, the plaintiff's Complaint must state, at a minimum, "the purpose of or any overt acts perpetrated by defendants which *reasonably relate* to the claimed conspiracies." *Zemsky v. New York,* 821 F.2d 148, 151 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987) (emphasis added). It does not.

■■■ The plaintiff's conspiracy claim fails to satisfy the foregoing pleading requirement. To merely state in a conclusory fashion that a conspiracy exists is wholly insufficient, and to allow such a lax pleading requirement would do violence to even the liberal language of Rule 8(a). Thus, the plaintiff cannot withstand dismissal of this claim merely by alleging that the defendant conspired, without more. His assertions are nothing more than self-serving supposition and surmise.[6] *Ostrer v. Aronwald,* 567 F.2d 551, 552 (2d Cir.1977). Therefore, this claim fails to state a cause of action upon which relief can be granted and is accordingly dismissed.

## L. Pendent State Claims

■■■ The only remaining claims in this case are based on alleged violations of the New York state law. This Court may exercise jurisdiction over state law claims if, in its discretion, it decides to exercise supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(a), the exercise of supplemental jurisdiction is appropriate "in any civil action of which the district courts have original jurisdiction," and wherein the state claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1990 & Supp.). A District Court, however, "may decline to exercise supplemental jurisdiction over a claim ..." for any

5. The Second Circuit has "previously held that even a *pro se* complaint 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Id., citing Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.) (per curiam), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

6. As this Court has held before, conclusory and unsubstantiated allegations of corruption, cover-ups, intentional misconduct and assorted unsavory behavior do not suffice to state a claim under 42 U.S.C. § 1983. *See Collins v. Unified Court System,* 1991 WL 111218 *3, 1991 U.S.Dist. LEXIS 8521, *3 (N.D.N.Y.1991).

one of four enumerated exceptions set forth in the statute. 28 U.S.C. § 1367(c).

The relevant exception to the exercise of supplemental jurisdiction in this case is that this Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, since all the federal claims have been dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses those claims without reaching the merits for lack of subject matter jurisdiction.

## M. Qualified Immunity

The Court need not address the issue of qualified immunity, because all claims have been dismissed.

## III. CONCLUSION

For the foregoing reasons, the defendant's motions are GRANTED, and the plaintiff's Complaint is dismissed in its entirety.

**It is so ordered.**