Warren BASS, Plaintiff-Appellant,

v.

Saul A. JACKSON, Nassau County Commissioner of Corrections; "John" Waters, Lt. For Security, Nassau County Correctional Center; "Jack" Spinner, Correctional Officer, First Class, Nassau County Correctional Center; "Frank Smith," M.D.; "Ed Jones," M.D.; and Walter J. Flood, Warden, Nassau County Correctional Center, Defendants-Appellees.

No. 151, Docket 85–2155.

United States Court of Appeals, Second Circuit.

Submitted Oct. 23, 1985.

Decided May 13, 1986.

Warren Bass, pro se.

Edward G. McCabe, Co. Atty. of Nassau County, Mineola, N.Y. (Robert O. Boyhan, Deputy Co. Atty., Mineola, N.Y., of counsel), for defendants-appellees.

Before PIERCE, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff Warren Bass appeals from the district court's dismissal of his complaint brought under 42 U.S.C. § 1983. Bass, a pretrial detainee in the Nassau County Correctional Center ("NCCC"), brought this action against Saul Jackson, Nassau County Commissioner of Corrections, Walter J. Flood, Warden of NCCC, John Waters, a supervising officer at NCCC, Jack Spinner, a Corrections Officer with supervisory authority in the D floor at NCCC, and two doctors described as "Frank Smith" and "Ed Jones." Bass alleged that the defendants did not properly protect him in known dangerous conditions, that as a result he had liquid ammonia thrown in his face by fellow inmates, and that the defendants subsequently provided inadequate medical care. We reverse in part and affirm in part.

We begin by restating the allegations of Bass' complaint, which of course we assume to be true for purposes of this appeal. Bass and detainee Rhoden were incarcerated in protective custody cell block D–3. The block had for some months been "run" by inmates Banks, Durant, and Zavarro. Because Rhoden had often questioned the latter's authority, a hostile atmosphere had developed. Other allegations indicate that the trouble between Rhoden and others had been made known to the prison authorities. Shortly before the events in question, moreover, Banks had surrendered a homemade knife to Spinner in a meeting at which the two discussed a dispute over where Rhoden should be housed.

On the morning of November 25, Rhoden, Banks and Durant became involved in an argument that was interrupted by lunch. After lunch, plaintiff went to the cell of inmate Cole. The morning's argument resumed, with Rhoden eventually walking away from the argument towards Cole's cell. As he was about to enter the open cell, he was struck from behind by Banks, while Durant picked up a metal mop wringer and menaced Rhoden with it.

At this point, Banks and Durant began throwing various objects at Rhoden, and

taunted him to come out. Plaintiff and Cole were trapped in Cole's cell by these activities in the cell doorway. Soon afterward, Banks slammed the door shut, locking plaintiff, Rhoden, and Cole in the cell. Banks and Durant then obtained a quart bottle of ammonia from Zavarro, filled two cups with the ammonia, and threw the liquid on the three inmates trapped in the cell. Plaintiff and Rhoden were struck in the face by the ammonia and began calling for a Corrections Officer. None appeared for two to three minutes, despite the fact that an officer is supposed to be stationed in the "lock box" area, within twenty feet of Cole's cell, at all times.

When officers did arrive, they instructed the plaintiff and Rhoden to get into the shower. Rhoden collapsed and had to be carried into the shower; plaintiff rinsed himself off and flushed his eyes in the shower. According to the complaint, the two inmates were then taken to NCCC's medical section, where they were given a cursory physical examination and left sitting on a bench for five to six hours. There was no physician on duty at the NCCC, and they were eventually transported to the emergency room at the Nassau County Medical Center. At the Medical Center, plaintiff's eyes were properly flushed and examined by an ophthalmologist, who determined that the ammonia had caused "irisitis," an inflammation of the iris. Eyedrops were prescribed and administered.

Plaintiff alleges that since returning to the jail he has experienced redness, tearing, and itching in both eyes, and cannot read for long periods of time, conditions that did not exist before the incident. Plaintiff further alleges that his requests for sick-call have not been honored, and his requests to see an ophthalmologist have been denied. He therefore has brought this suit for damages and injunctive relief.

The case was assigned to Magistrate Jordan who ordered that discovery be completed by May 17. Nevertheless, the district court held a hearing on April 11 and thereafter dismissed the complaint for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6). Bass raises numerous claims of unfairness and lack of notice, none of which we reach because we conclude that Bass' complaint states a claim on which relief may be granted.

On a 12(b)(6) motion, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). *Pro se* complaints, moreover, are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam), and we have held that "a federal judge should not dismiss a prisoner's pro se, in forma pauperis claim as frivolous unless statute or controlling precedent clearly forecloses the pleading, liberally construed." *Cameron v. Fogarty*, 705 F.2d 676, 678 (2d Cir.1983).

Bass makes two distinct constitutional claims. First, he alleges a failure to protect him from physical harm in violation of his constitutional rights under the Eighth and Fourteenth Amendments. The Supreme Court has recently made clear that the Due Process Clause is "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (emphasis in original). That case explicitly did not consider whether something less than intentional conduct, such as recklessness or gross negligence, is enough to trigger the protections of the Due Process Clause. *Id.*, 106 S.Ct. at 667 n. 3. In the absence of further guidance, we must adhere to our recently restated position that

[a]n isolated omission to act by a state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those

under his control and dependent upon him.

*Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (quoting *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)).

Under this test, we cannot say that Bass can prove no set of facts in support of a claim of deliberate indifference on the part of some defendants. The claim that the block had been "run" by inmates hostile to Rhoden, the knowledge of corrections officers of this ongoing hostility, the dispute over Rhoden's location in the prison, and the presence of weapons are enough to raise questions of fact as to what the correctional officers knew and when they knew it. Bass' allegations are thin, but the liberal rules regarding *pro se* pleadings compel us to hold that Bass has stated a claim that may, with the aid of discovery, show deliberate indifference on the part of correctional officials to pending violence in Block D–3.

However, respondeat superior liability does not lie against corrections officers in Section 1983 actions. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered. Under that standard, plaintiff has failed to allege such acts by defendants Jackson and Flood. His allegations with regard to the inadequacy of the prison regulations are too conclusory to withstand a motion to dismiss, and neither Jackson nor Flood are otherwise implicated in the events in question. His descriptions of the authority and responsibility of Waters and Spinner, however, are sufficient to implicate them in his claim of deliberate indifference.

Plaintiff's second claim is that he suffered a deprivation of adequate medical care serious enough to be of a constitutional nature. Under *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Although

Bass' *pro se* account of events may amount to an allegation of deliberate indifference, he does not connect the failure to obtain prompt medical care to any of the correctional or medical defendants. This claim must, therefore, be dismissed. Whether the harm suffered from the alleged lack of medical care may be recovered as proximately resulting from the earlier incident alleged is not now before us.

No allegation of the complaint supports a claim against Doctors Smith or Jones, and the dismissal is affirmed as to them.

In conclusion, we reverse on Bass' claims against Waters and Spinner. We affirm as to the dismissal of the complaint against Jackson, Flood, Smith and Jones.