842 F.2d 27
 Miguel MORALES, Plaintiff-Appellant,
v.
NEW YORK STATE DEPARTMENT OF CORRECTIONS, Thomas A.
Coughlin, Commissioner, Charles James,
Superintendent, and W. Friedman,
Corrections Officer,
Defendants-Appellees.
 No. 688, Docket 87-2092.
 United States Court of Appeals,
Second Circuit.
 Submitted Feb. 8, 1988.
Decided March 16, 1988.
 
 James F. Gill, New York City (Steven Kornblau, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, of counsel), for plaintiff-appellant.
 Peter H. Schiff, Deputy Sol. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., William J. Kogan, Asst. Sol. Gen., John Q. Driscoll, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants-appellees.
 Before CARDAMONE and PIERCE, Circuit Judges, and STANTON, District Judge.*
 PIERCE, Circuit Judge:
 
 
 1
 The law is settled that a prisoner cannot base a federal civil rights action brought under 42 U.S.C. Sec. 1983 on claims of a negligent failure of state prison officials to protect him from injury at the hands of another inmate. In this action for damages, however, the plaintiff-appellant, a state prisoner who appeared pro se before the district court, essentially claims that he was injured by a vengeful fellow inmate, due to the deliberate and callous indifference of the defendants, who are prison personnel. Defendants moved to dismiss the complaint; plaintiff moved to amend his complaint; the district court, John T. Curtin, Ch. J., allowed plaintiff to amend and, on the amended complaint, granted appellees' motion to dismiss and denied leave to file a second amended complaint. For the reasons discussed below, we affirm in part, reverse in part, and remand.BACKGROUND
 
 
 2
 In April, 1986, appellant Miguel Morales, formerly an inmate at the Collins Correctional Facility II in Helmuth, New York, commenced this action for damages, alleging that the four named defendants--the New York State Department of Corrections, State Commissioner Thomas Coughlin, Collins Superintendent Charles James, and Corrections Officer Friedman--were responsible for an attack perpetrated against him by a fellow inmate, one Baker. Morales filed an amended complaint in December, 1986, which (1) dropped the State Department of Corrections and Commissioner Coughlin as defendants; (2) named as additional defendants prison officials Wilson, Dersham, Matos, and Rivera; and (3) incorporated by reference additional factual allegations as set forth in an accompanying affidavit signed by Morales. Morales alleged that he and Baker had previously fought on February 25, 1986, which led to a "Tier 3 hearing," following which plaintiff and Baker were separated. The subject attack occurred on April 9, 1986, at approximately 5:45 p.m., while plaintiff was lying on a bed in the dormitory. At that time, Baker "was allowed to enter" plaintiff's housing unit, although Baker was "without authorization to be in the dormitory;" thereupon Baker attacked plaintiff, causing him to suffer "a broken and bleeding nose, scratched eye and multiple contusions on [his] face and head."
 
 
 3
 For purposes of reviewing the dismissal being appealed, we must assume the pro se plaintiff's allegations to be true as well as read his complaint liberally. This we do with respect to the above-stated assertions as well as those which follow.
 
 Corrections Officer Friedman
 
 4
 Friedman was the officer on duty in the dormitory when the attack occurred. He allowed Baker to enter the dormitory without authorization in violation of applicable rules. Friedman "did not try to stop the assault while it took place;" he "stood and watched it continue until [plaintiff] forced [himself] to get up." "That was when he told [Baker] to back off."
 
 Sergeant Rivera
 
 5
 Following the incident of February 25, 1986, plaintiff admitted to Rivera that he and Baker had fought. Rivera was aware that the incident had led to a hearing and a "separation" of the two. Two weeks after the incident, Baker was returned to the same building, causing plaintiff to tell Sergeant Rivera "numerous times" that he felt threatened and that it was dangerous to have them together. Rivera already knew that Baker was "extorting and assaulting other inmates."
 
 Lieutenant Matos
 
 6
 On the morning of April 9, 1986, plaintiff reported to the Captain that he was in danger. The Captain told him to speak to Lt. Matos, as head of security. Plaintiff told Matos of an actual attempt by Baker to assault plaintiff the previous day, when Baker had lain in wait for plaintiff with a makeshift weapon. Lt. Matos told plaintiff he would see what he could do, and he had enough time to prevent the actual attack that took place.
 
 Lieutenant Dersham
 
 7
 Dersham knew about the earlier fight between Baker and plaintiff prior to the subject attack. He also knew of similar incidents and threats by Baker involving other inmates. Nevertheless, Baker was allowed to remain in the same housing unit "with the inmates he had problems with" and Dersham did nothing "to prevent the assaults."
 
 Captain Wilson
 
 8
 Wilson had been the hearing officer in connection with the event of February 25, 1986. Despite his knowledge of Baker's hostility toward plaintiff, Wilson "failed to make it clear that [Baker] was not to be put back [in] the same building knowing it would be a threat to [plaintiff]." Wilson had a responsibility to report the February 25, 1986 incident to the superintendent, especially since it involved life, health, and property. Plaintiff told Wilson that Baker was extorting and assaulting inmates. Due to Wilson's failures, plaintiff was subjected to another attack in his dormitory by Baker.Superintendent James
 
 
 9
 As superintendent, James had responsibility for the protection of inmates in the institution. He was aware of Baker's past misconduct which indicated that he was a threat to inmates.
 
 DISCUSSION
 
 10
 "On a 12(b)(6) motion, the complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Bass v. Jackson, 790 F.2d 260, 262 (2d Cir.1986) (quoting Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam)). Moreover, federal courts should not dismiss prisoners' pro se, in forma pauperis complaints as frivolous "unless statute or controlling precedent clearly forecloses the pleading, liberally construed." Id. (quoting Cameron v. Fogarty, 705 F.2d 676, 678 (2d Cir.1983)).
 
 
 11
 As noted above, the due process clause of the fourteenth amendment is not implicated by mere negligence on the part of state officials. Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); Daniels v. Williams, 474 U.S. 327, 330, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). An inmate's claim based on negligence, however, "is quite different from one involving injuries caused ... by another prisoner where officials simply stood by and permitted the attack to proceed...." Davidson, 474 U.S. at 348, 106 S.Ct. at 670-71 (citing Curtis v. Everette, 489 F.2d 516 (3d Cir.1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974)). In addition, although the Supreme Court has left open the question of whether something less than intentional conduct, such as recklessness or gross negligence on the part of prison officials or others, is enough to trigger the protections of the due process clause, see Daniels, 474 U.S. at 334 n. 3, 106 S.Ct. at 667, n. 3; Barbera v. Smith, 836 F.2d 96, 99 (2d Cir.1987), this circuit has continued to adhere to the position that a state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under Sec. 1983. Bass, 790 F.2d at 262-63 (citing Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir.1985)). See also Gill v. Mooney, 824 F.2d 192, 195 (2d Cir.1987) (allegation of willful indifference sufficient to withstand motion to dismiss Sec. 1983 claim); Villante v. Department of Corrections, 786 F.2d 516, 522 (2d Cir.1986) (deliberate indifference sufficient for Sec. 1983 action, even after Davidson and Daniels ); McClary v. O'Hare, 786 F.2d 83, 89 n. 6 (2d Cir.1986).
 
 
 12
 In light of the foregoing standards, we conclude that the district court erred in dismissing the amended complaint as to all the defendants except James. The action clearly should be reinstated against Friedman, given Morales' claim that Friedman stood by and permitted Baker to attack. See Davidson, 474 U.S. at 348, 106 S.Ct. at 670-71; Curtis, 489 F.2d at 518-19. Likewise, the action should be reinstated against Matos, in light of Morales' allegation that he complained to Matos, only a few hours before the April 9 attack, that Baker had tried to attack him the night before and would probably do so again. In our view, a rational jury could find that Matos' alleged inaction, if proven, goes beyond the mere negligence exhibited by prison officials in Davidson.
 
 
 13
 The claim that Rivera, Dersham, and Wilson exhibited deliberate indifference following Morales' repeated warnings is somewhat more difficult to evaluate. Assuming, at this pleading stage, that Morales' allegations are true, however, we believe that he may be able to adduce facts from which a rational trier of fact could conclude that the defendants' failure to alert prison superiors of Morales' repeated warnings or to take other appropriate actions to keep Baker away from Morales amounted to deliberate indifference. However, because Morales has alleged no connection between his injuries and any acts on the part of Superintendent James, the complaint was properly dismissed as to James. See Bass, 790 F.2d at 263 (affirming dismissal of complaint as to prison warden, where plaintiff presented only conclusory allegations that prison regulations governing conduct of subordinates were inadequate and warden was not otherwise implicated in the events in question).
 
 
 14
 For the reasons stated above, we reverse the district court's dismissal of the amended complaint as to Friedman, Matos, Wilson, Dersham, and Rivera; we affirm the court's dismissal of the complaint against James; and we remand for further proceedings consistent with this opinion.
 
 
 
 *
 Hon. Louis L. Stanton, United States District Judge, United States District Court for the Southern District of New York, sitting by designation