**INDIAN HARBOR INSURANCE COMPANY, Plaintiff,**

v.

**GLOBAL TRANSPORT SYSTEM, INC., Defendant.**

**No. 01 CIV 10159(RWS).**

United States District Court, S.D. New York.

March 20, 2002.

Skoufalos, Llorca & Ziccardi, New York City (Manuel R. Llorca, Manuel A. Molina, of Counsel), for plaintiff.

Lyons, Skoufalos, Proios & Flood, New York City (George N. Proios, Edward P. Flood, of Counsel), for defendant.

*OPINION*

SWEET, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, defendant, Global Transport System ("Global"), seeks to dismiss the complaint of plaintiff, Indian Harbor Global Insurance Company ("Indian Harbor") on the basis of an arbitration clause in one contract. Global also seeks an order pursuant to 9 U.S.C. § 4 compelling Indian

Harbor to arbitrate its disputes with Global.

For the foregoing reasons, the motion will be granted, the complaint dismissed and arbitration compelled.

### Parties

Indian Harbor is a corporation with its principal place of business in Connecticut.

Global is a corporation with its principal place of business in Puerto Rico.

### Facts

The following facts are taken from Indian Harbor's complaint and documents referred to therein.

Global first obtained a policy with Indian Harbor in June 1999. The policy, number MMI00030275, provided Hull and Machinery insurance for its barge, Barge Global I. The policy went into effect September 3, 1999 and expired on September 3, 2000. It contained a Binding Arbitration Clause that states: "The Company and all Insurers under this policy agree that in the event of any difference arising between the Assured and the Company with reference to this policy, such difference will be referred to three disinterested arbitrators...."

Global was entitled to make changes and additions to the policy with Indian Harbor's approval. It did so by asking its broker, Frenkel & Co. ("Frenkel") to contact Indian Harbor's agent Mariner Management ("Mariner"), who has been succeeded by Castlerock Risk Service, LLC ("Castlerock"). If it approved of the change, Indian Harbor then would issue an endorsement recognizing the change or addition.

On April 16, 2000, Indian Harbor issued an endorsement to the policy to include "port risk" coverage of another barge, the Hopper Barge MST 17 (which ultimately sank). Previously, Frenkel had contacted Mariner requesting such coverage.

The policy was renewed effective September 3, 2000 and terminating on September 3, 2001.

On December 29, 2000, Global sought to amend the policy and obtain a Navigation Endorsement for the Barge MST 17. Castlerock received the request, from Frenkel, at 10:30 a.m. It stated: "With effect from 12/26/00 please amend 'MST 17' to navigating basis. Vessels going to Santo Domingo to operate as sand carrying vessel bringing sand from West Coast to East Coast." Frenkel altered Global's request later that day, after the Castlerock office was closed for the holiday weekend, to have the policy effective December 31, 2000. Frenkel did not receive a reply to its request. Indian Harbor claims that neither Castlerock nor Indian Harbor had a reasonable opportunity to review Global's request.

On December 31, 2000, the Barge MST 17 departed San Juan Harbor under the tow of the tug KRUEGER. The barge was in ballast and en route to the Dominican Republic. The barge did not have a Load Line inspection to determine seaworthiness, required by the United States Coast Guard for navigation at sea.

At 10 p.m. on January 1, 2001, the Master of KRUEGER discovered that the Barge MST 17 was severely listing. A short time later, the Barge MST 17 sank north of Desecho Island.

Global presented a claim to Indian Harbor for the total loss of the Barge MST 17 claiming that the request on December 29, 2000, constitutes an amendment to the policy. Indian Harbor has declined coverage. As a result, Global initiated arbitration on September 10, 2001, in accordance with the Binding Arbitration Clause.

Indian Harbor filed suit on November 16, 2001, seeking a declaratory judgment that it is under no obligation to indemnify

Global, a stay of any arbitration proceedings, and interest, costs and attorney's fees. In lieu of an answer, Global then filed this motion to dismiss, which was heard and marked fully submitted on January 23, 2002.

## Discussion

### I. *Rule 12(b)(6) Motion to Dismiss*

In reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 122 (S.D.N.Y.1988). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

### II. *Arbitration Is Compelled*

Indian Harbor asserts that the question in this case is whether a contract—and thus an agreement to arbitrate—exists between it and Global. If so, it is a proper subject for this Court, rather than an arbitrator. *E.g.*, 9 U.S.C. § 1 *et seq.; Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972) ("the question of the very existence of the charter party which embodies the arbitration agreement" should be decided by court). Global contends, on the other hand, that the issue is whether its eleventh-hour request successfully modified policy MMI00030275 or, if it failed to do so, whether that policy (inasmuch as it covers MST 17) is terminated. Such a dispute would be proper for arbitrators. *E.g., Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir.1997); *Rochdale Village Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979) (questions of contract termination properly for arbitration).

Arbitration clauses are to be construed broadly, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Indeed, doubts as to whether a claim falls within the scope of an arbitration clause should be resolved in favor of arbitrability where the existence of an arbitration agreement is undisputed. *Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 226 (2d Cir.2001). The arbitration clause at issue here is a broad one, covering "any difference arising between the Assured and the Company with reference to this policy ...." Global and Indian Harbor disagree as to whether the Dec. 29 facsimiles sent to Indian Harbor's agent modified the policy or not.

Indian Harbor admits that what Global sought was an endorsement to the policy, and thus a change to the contract. It is black-letter law that an endorsement "[w]hen issued in compliance with all requisites, [becomes] part of the contract to the same extent as if it were actually embodied therein." Couch on Insurance, § 18:17 (3rd ed.1995); *see also Massachusetts Bonding & Ins. Co. v. Rutley Constr. Co.*, 159 Misc. 392, 395, 287 N.Y.S. 662, 666 (1936) ("The indorsement or rider, as it is commonly characterized is a part of the policy contract."). The undisputed endorsements to the policy in this case reveal that they were intended to be part of the policy. For instance, Endorsement # 2, adding hull coverage for MST 17, is subject to "all of the terms and condition of *the Policy*" (emphasis supplied) and "in consideration of *additional* premium."

Moreover, if, as Indian Harbor claims, the December 29 correspondence did not modify the policy in the absence of an acceptance, the policy is terminated by its very language, and terminations are properly submitted to arbitration. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir.1997); *Aaacon Auto Transport, Inc. v. Harold Dean Barnes Used Cars, Inc.*, 603 F.Supp. 1347, 1348 (S.D.N.Y.1985); *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980); *Rochdale Village Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979) ("If a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination, will be properly consigned to the arbitrator . . . ."); *Nolde Bros. v. Bakery and Confectionary Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). The American Institute Port Risk Agreement, which is included in the policy containing the arbitration clause, states in pertinent part:

If the Vessel(s) commences, or proceeds on, a voyage during the term of this insurance, the Policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

There is no dispute that MST 17 commenced and proceeded on a voyage during the term of the insurance. The contract thus would be terminated unless the modification took effect. Again, a panel of arbitrators is the proper entity to determine whether the correspondence altered the contract so as to prevent termination.

According to Indian Harbor, the issue is in fact whether there is a new contract between the two corporations—rather than a modification of an existing policy. Global, through its agent Frenkel, did not write to Castlerock to obtain a new policy, but a modification to the old one. Frenkel requested that Indian Harbor "amend" the policy. As discussed above, Global attempted to obtain an endorsement to the policy containing the arbitration clause.

Indian Harbor cites cases where parties who disagree over the existence of a contract—and thus the existence of an agreement to arbitrate within them—are entitled to litigate the issue before a court. None of the cases involve the situation here, where the parties have agreed to arbitrate in an original policy, and the dispute revolves around the viability of a modification to that policy or to termination. Indian Harbor has already agreed to arbitrate, and agreed to a rather broad reach of this right.

For the foregoing reasons, the motion to dismiss is granted, the complaint is dismissed and Indian Harbor is directed to proceed to arbitration.

It is so ordered.