**Divine ALLAH, Plaintiff,**

**v.**

**Glenn S. GOORD, Commissioner of the Department of Correctional Services, individually and in his official capacity; William Phillips, Superintendent of Green Haven Correctional Facility, individually and in his official capacity; Correctional Officer "John" Simmons, "John" being a fictitious first name, individually and in his official capacity; Correctional Officer, "John" Ferguson, "John" being a fictitious first name, individually and in** his official capacity; Carl Koenigsmann, M.D., Medical Director of Green Haven, individually and in his official capacity; and New York State Department of Correctional Services, Defendants.

No. 04 Civ. 6717(SAS).

United States District Court, S.D. New York.

May 13, 2005.

---

Divine Allah, Romulus, NY, Pro se.

Julia H. Lee, Assistant Attorney General of the State of New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Divine Allah, proceeding pro se, commenced this action pursuant to section 1983 of Title 42 of the United States Code ("section 1983") against defendants Glenn Goord, Commissioner of the Department of Correctional Services, William Phillips,

Superintendent of Green Haven Correctional Facility ("Green Haven"), Carl Koenigsmann, Medical Director at Green Haven, John Ferguson and John Simmons, Correctional Officers, and the Department of Correctional Services ("DOCS"). The Complaint alleges that defendants failed to safely transport plaintiff, a wheelchair-bound inmate, to and from outside medical providers, thereby violating his rights under the Fifth, Eighth, and Fourteenth Amendments, the Rehabilitation Act of 1973 ("Rehabilitation Act") and the Americans with Disabilities Act ("ADA"). As a result, plaintiff seeks redress in the form of monetary damages and injunctive relief.[1]

Defendants now move to dismiss the Complaint, arguing that: (1) plaintiff has failed to state a claim for relief under section 1983; (2) defendants are entitled to qualified immunity; and (3) in the absence of State consent, the Eleventh Amendment bars claims against the State and its agencies under the ADA and the Rehabilitation Act.[2] Despite the issuance of a thirty day notice to plaintiff, dated December 22, 2004, requesting a response to the motion, Divine Allah has not submitted any opposition to defendants' motion. Accordingly, I

will decide this motion solely on the papers submitted by defendants. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## II. BACKGROUND

Divine Allah is a prisoner in the custody of DOCS and is currently incarcerated at Five Points Correctional Facility. The incidents alleged in his Complaint occurred during his confinement at Green Haven.

Divine Allah is paralyzed from the waist down and is confined to a wheelchair.[3] DOCS contracts with St. Agnes Hospital to provide medical services to prisoners who require medical care that is unavailable at the prison facility.[4] In order to transport prisoners to their medical appointments with outside providers, DOCS utilizes a wheelchair-accessible van which is equipped with wheelchair-locking devices and seat-belts.[5] DOCS employees are charged with the task of driving prisoners to and from medical appointments.[6]

On September 24, 2002, during a return trip from St. Agnes Hospital to Green Haven, Divine Allah alleges that he was placed into a wheelchair-locking device by Officers Simmons and Ferguson.[7] "A

---

1. "It is well settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Candelaria v. Greifinger*, No. 98 CV 0017, 1998 WL 312375 (N.D.N.Y. June 8, 1998) (citing *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.1996)). Since filing his claim, Divine Allah has been transferred from Green Haven to Five Points Correctional Facility. Accordingly, plaintiff's request for injunctive relief is denied without prejudice. In the event that Divine Allah is transported from Five Points Correctional Facility to an outside medical provider in a vehicle that is not properly equipped to transport wheelchair-bound inmates, he may renew his claim for injunctive relief.

2. This motion to dismiss will not address any claims brought against Corrections Office

John Simmons who is currently on military leave from DOCS serving in Iraq indefinitely and, thus, has not been personally served. On December 22, 2004, I granted Simmons' request to stay discovery pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 521, until he is served and available to participate in his own defense.

3. *See* Complaint ¶ 18.

4. *See id.* ¶ 21.

5. *See id.* ¶ 24.

6. *See id.*

7. *See id.* ¶ 33.

loose fitting seat-belt was then placed around plaintiff and his wheelchair" and his hands were mechanically restrained.[8] Thereafter, Officer Simmons, who was driving the van, proceeded to exit the hospital's parking lot by way of a steep declining hill. Plaintiff alleges that Officer Simmons drove down the hill at a high rate of speed and upon reaching the bottom, abruptly applied the brakes. As a result, plaintiff slid forward through the seat-belt and fell to the floor of the van, injuring his neck, head, and back. Officer Simmons then stopped the van at the side of the road, at which time Officer Ferguson placed plaintiff in a bear hug and repositioned him in the wheelchair-locking device. Officer Simmons resumed driving and once again drove quickly and applied the brakes suddenly. This caused Divine Allah, along with his wheelchair cushion, to slide through the seat-belt and onto the floor of the van a second time, exacerbating his injuries.[9]

Divine Allah claims "that this van is manifestly unsafe for individuals in wheelchairs [because] it does not ensure transport . . . without the risk of serious physical harm occurring." [10] In particular, "the van . . . does not adequately secure each prisoner in their wheelchair," creating the risk that an inmate will be thrown from his seat and incur serious injuries.[11] The risk of injury is compounded by the fact that prisoners are restrained during transport, thus decreasing the likelihood that they can protect themselves if they do fall.[12] Moreover, plaintiff alleges that defendants Phillips, Koenigsmann, Goord, and DOCS, knew or should have known of the unsafe condition of the vehicle because other prisoners who utilize wheelchairs had been injured in the same manner.[13] Divine Allah argues that defendants Phillips, Koenigsmann, Goord and DOCS could have remedied the situation by providing adequate supervision, training and equipment to DOCS personnel.[14] Instead, plaintiff contends that defendants chose to "maintain their policy and practice of discriminat[ing]" against wheelchair-bound prisoners.[15]

## III. LEGAL STANDARD

### A. Motion to Dismiss Standard

 A motion to dismiss should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " [16] At the motion to dismiss stage, the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." [17]

 A complaint need not state the legal theory, facts, or elements underlying the claim except in certain instances. Pursuant to the simplified pleading standard

8. *Id.* ¶¶ 33–34.

9. *See id.* ¶¶ 35–36.

10. *Id.* ¶ 25.

11. *Id.*

12. *See id.* ¶¶ 26–27.

13. *See id.* ¶ 38.

14. *See id.* ¶¶ 39–41.

15. *Id.* ¶ 42.

16. *Weixel v. Board of Educ. of New York,* 287 F.3d 138, 145 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (alterations omitted)).

17. *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (quotation omitted).

of Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "[18] The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof."[19] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[20] Additionally, when a plaintiff is proceeding pro se, courts are instructed to construe the complaint liberally.[21]

### B. Qualified Immunity Standard

■ The doctrine of qualified immunity shields government officials from civil damages liability as long as " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[22] Qualified immunity balances "the need ... to hold responsible public officials exercising their power in a wholly unjustified manner and ... [the need] to shield officials responsibly attempting to perform their public duties in good faith

from having to explain their actions to the satisfaction of a jury."[23] Because qualified immunity "is 'an immunity from suit rather than a mere defense from liability ... it is effectively lost if a case is erroneously permitted to go to trial.' "[24] Accordingly, the Supreme Court has repeatedly " 'stressed the importance of resolving the question of qualified immunity at the earliest possible stage in litigation.' "[25]

■ When assessing a claim of qualified immunity, a court must first determine whether, "the officer's conduct violated a constitutional right."[26] If no constitutional right is violated, no further inquiry is necessary. However, if a violation is proven, "the next sequential step is to ask whether the right was clearly established."[27] Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

### 1. Constitutional Standard: The Eighth Amendment

■ The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" and is applicable to the States through the Fourteenth Amendment.[28] In order to establish an Eighth

---

**18.** *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Rule 8(a)(2)).

**19.** *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir.2004) (quotation marks and citation omitted).

**20.** *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002); *Weinstein v. Albright*, 261 F.3d 127, 131–32 (2d Cir.2001).

**21.** *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997).

**22.** *Velez v. Levy*, 401 F.3d 75, 100 (2d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

**23.** *Locurto v. Safir*, 264 F.3d 154, 162–63 (2d Cir.2001).

**24.** *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

**25.** *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

**26.** *Id.* at 201, 121 S.Ct. 2151.

**27.** *Id.*

**28.** *Wilson v. Seiter*, 501 U.S. 294, 296–97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Amendment violation arising out of the denial of medical care, a plaintiff must prove that defendants were deliberately indifferent to his serious medical needs. The deliberate indifference standard contains both an objective and subjective prong.[29] Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessities.' "[30] This includes " 'not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.' "[31] The subjective prong requires a showing that defendant "possessed a 'sufficiently culpable state of mind.' "[32] The level of culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm."[33] If plaintiff alleges facts that satisfy each of these elements, he will have successfully pled an Eighth Amendment claim.

## 2. Constitutional Standard: Due Process

■■■■ "In order to state a claim for denial of procedural Due Process . . . a prisoner must allege that he possessed a protected liberty interest, and was not af-forded the requisite process before being deprived of that liberty interest."[34] A two-part test governs whether a protected liberty interest exists. *First,* "the prisoner must establish that the confinement or restraint complained of creates an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.' "[35] *Second,* the prisoner must prove that the "State has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint."[36] Allegations which satisfy this two-prong test state a claim under the Due Process Clause of the Fifth and Fourteenth Amendments.

■■■■ Under the Due Process Clause, liberty interests have generally been characterized as "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless, impose atypical significant hardship on the inmate in relation to the ordinary incidents of prison life."[37] In *Sandin v. Conner,* the Supreme Court gave examples of liberty interests that prisoners still hold, including the right to be free from involuntary ingestion of psychotropic drugs and involuntary commitment to a mental hospital.[38] The " 'degree and duration of an inmate's

**29.** *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

**30.** *Trammell v. Keane,* 338 F.3d 155, 162 (2d Cir.2003) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970).

**31.** *Brady v. Griffith,* No. 95 Civ. 2364, 1998 WL 814630, at *3 (S.D.N.Y. Nov. 23, 1998) (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)).

**32.** *Trammell,* 338 F.3d at 162 (quoting *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970).

**33.** *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

**34.** *Cruz v. Gomez,* 202 F.3d 593, 598 (2d Cir.2000) (citing *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996)).

**35.** *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

**36.** *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

**37.** *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

**38.** *See id.* at 479, 115 S.Ct. 2293.

restraint are the key consideration'" in determining whether a protected liberty interest exists.[39]

### 3. Clearly Established Law Standard

 Once plaintiff establishes that defendants' conduct infringed on a constitutional right, he must then prove that at the time the incident took place, the law prohibiting defendants' conduct was clearly established. Clearly established means: "'(1) the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'"[40] If an official's conduct did not violate clearly established law, that official is entitled to qualified immunity from suit.

### C. Personal Involvement

 "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"[41] Under this requirement, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates."[42] However, there may be liability if:

(1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[43]

Thus, plaintiff must allege facts sufficient to establish that defendants were personally involved in the alleged constitutional deprivation in order to sustain a section 1983 claim.

### D. ADA and Retaliation Claim Standard

 Section 504 of the Rehabilitation Act and Title II of the ADA are applicable to inmates in state prisons.[44] In order to state a claim under the ADA, a prisoner must establish that: "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity."[45] To state a claim for relief under section 504 of the

---

**39.** *Cruz,* 202 F.3d at 597 (quoting *Arce v. Walker,* 139 F.3d 329, 335 (2d Cir.1998)).

**40.** *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (quoting *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998)).

**41.** *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)).

**42.** *Ford v. Conway,* No. 03 CV0927S, 2004 WL 1071171, at *4 (W.D.N.Y. Mar. 16, 2004).

**43.** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

**44.** *See Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (ADA); *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1035 (S.D.N.Y.1995) (Rehabilitation Act).

**45.** *Hallett v. New York State Dep't of Corr. Services,* 109 F.Supp.2d 190, 198 (S.D.N.Y. 2000) (quoting *Clarkson,* 898 F.Supp. at 1037; 42 U.S.C. § 12132).

Rehabilitation Act, an inmate must show that:

 (1) he is a 'qualified individual with a disability';

 (2) he is 'otherwise qualified' to participate in the offered activity or program or to enjoy the services or benefits offered;

 (3) he is being excluded from participation or enjoyment solely by reason of his disability; and

 (4) the entity denying the inmate participation or enjoyment receives federal financial assistance.[46]

## IV. DISCUSSION

### A. Qualified Immunity Claim

Divine Allah alleges that defendants violated his Eighth Amendment and Due Process rights by transporting him in an unsafe vehicle, thereby causing him to fall from his wheelchair, severely injuring his head, neck and back. Defendants argue that they acted carefully and deliberately with regard to plaintiff's care. Nonetheless, defendants contend that plaintiff's allegations, even if they are accurate, are insufficient to satisfy the subjective and objective prongs of the Eighth Amendment's deliberate indifference standard. Defendants further allege that even if their actions satisfy both the objective and subjective prongs, they are shielded from liability through the doctrine of qualified immunity. Finally, defendants aver that

New York has not established a protected liberty interest in receiving safe transportation to and from a medical care facility while incarcerated.

### 1. Constitutional Violation: Eighth Amendment Claim

In *Candelaria v. Greifinger*,[47] plaintiff, a wheelchair-bound inmate, brought suit against DOCS officials alleging that they violated his Eighth Amendment rights by failing to provide a "wheelchair-accessible vehicle capable of transporting him safely to his appointments at an outside medical facility."[48] In assessing plaintiff's claim, the court concluded that plaintiff alleged "sufficient facts to state an Eighth Amendment claim for deliberate indifference."[49]

In *Gill v. Mooney*, an inmate brought suit against sixteen officers and employees of the Great Meadow Correctional Facility, including Corrections Officer Jay Mooney.[50] Plaintiff alleged that Mooney violated his Eighth Amendment rights by forcing him to paint using an unsafe ladder. Plaintiff "had informed Mooney that the ladder was unsafe," however, "Mooney ordered him to continue working."[51] As a result, plaintiff fell from the ladder, injuring his neck and back. The district court dismissed plaintiff complaint on the grounds that he had failed to "allege any facts sufficient to state a claim of constitutional dimension."[52]

---

**46.** 29 U.S.C. § 794(a). *See also Clarkson*, 898 F.Supp. at 1036 (citing *Rothschild v. Grottenthaler*, 907 F.2d 286, 289–90 (2d Cir.1990)).

**47.** No. 96 CV 0017, 1998 WL 187383 (N.D.N.Y. April 15, 1998).

**48.** *Id.* at *3.

**49.** *Id.* The court noted that while plaintiff might have difficulty in "establishing the subjective component of his Eighth Amendment

claim," it was not necessary, on a motion to dismiss, to determine whether the plaintiff would ultimately succeed. Finding that plaintiff had stated a legally cognizable claim, the court denied defendants' motion to dismiss. *Id.* at *2.

**50.** 824 F.2d 192, 195 (2d Cir.1987).

**51.** *Id.*

**52.** *Id.*

On appeal, the Second Circuit reinstated plaintiff's Eighth Amendment claim against Mooney. In liberally construing the pleading, the court concluded that Mooney's alleged conduct " 'involve[d] more than ordinary lack of due care for the prisoner's interest or safety.' "[53] The court noted that Mooney's decision to order plaintiff to continue working on the ladder after learning of its unsafe condition "amounted to deliberate and willful indifference."[54] Therefore, the court found that plaintiff's complaint stated a colorable claim under the Eighth Amendment.

■ Here, Divine Allah has made allegations similar to those raised in *Candelaria*. Under the objective prong, plaintiff has alleged that when he fell to the floor of the van in question, he suffered "serious injury [to] his head, neck and back."[55] Moreover, plaintiff alleges that his injuries were compounded by the Officers' decision to repeat their actions. As a result, plaintiff alleges that he suffered, "unnecessary pain and discomfort, permanent disability and mental distress."[56] Thus, plaintiff adequately alleges that defendants' conduct was " 'sufficiently serious' from an objective standpoint."[57]

Plaintiff also alleges facts sufficient to establish the subjective prong of the Eighth Amendment test. Namely, plaintiff avers that defendants knew of the substantial risk caused by speeding and then stopping short, yet defendants did so not once but twice. Moreover, defendants should have been aware of the "danger to which Divine Allah and other prisoners who require a wheelchair are exposed by the [use of an] inadequate wheelchair van" because "other prisoners in the custody of DOCS ... had been injured while being transported in the same manner."[58] Furthermore, plaintiff alleges that "defendants ... maintained their policy and practice of discrimination" which was "motivated by ill will or animus towards prisoners with disabilities who require a wheelchair for mobility."[59] Accordingly, sufficient allegations exist to support a claim that defendants were deliberately indifferent to plaintiff's serious medical condition.

Construing the Complaint liberally, as I must, plaintiff's Eighth Amendment claim also rests on the fact that defendants' conduct amounted to " 'more than ordinary lack of due care for the prisoners interest or safety.' "[60] In *Gill v. Mooney*, plaintiff's warning to Mooney was sufficient to place the officer on notice regarding the potential risk posed by the ladder. In the instant case, defendants' decision to drive fast and stop short caused the alleged injury. Accordingly, defendants had first hand knowledge of the danger to which Divine Allah was exposed. Nonetheless, defendants proceeded to ignore this risk in complete disregard for plaintiff's interests or safety, deciding instead to repeat their injurious actions. Moreover, plaintiff alleges that the unsafe condition of the van

---

**53.** *Id.* (quoting *Bass v. Jackson*, 790 F.2d 260, 262–63 (2d Cir.1986)).

**54.** *Id.*

**55.** Complaint ¶ 35.

**56.** *Id.* ¶ 51.

**57.** *Candelaria*, 1998 WL 187383, at *2 (quoting *Davidson v. Coughlin*, 920 F.Supp. 305, 308 (N.D.N.Y.1996)).

**58.** Complaint ¶¶ 38–39.

**59.** *Id.* ¶¶ 42–43.

**60.** *Gill*, 824 F.2d at 195 (quoting *Bass*, 790 F.2d at 262–63).

itself constituted a portion of the hazard.[61] Plaintiff further alleges that defendants were on notice of this hazard. Namely, plaintiff avers that defendants were aware of prior incidents in which wheelchair-bound inmates had been injured due to the lack of appropriate equipment, training, and supervision provided to DOCS personnel.[62] Despite this knowledge, defendants continued to utilize this van to transport wheelchair-bound inmates. Therefore, under the standard set forth in *Gill*, defendants' conduct, if proven, violated plaintiff's Eighth Amendment rights.

### 2. Constitutional Violation: Due Process Claim

■■■■■ Although the Due Process Clause guarantees prison inmates protections against deprivation of certain rights, a right to safe transportation does not fall under the rights which have generally been accorded to prisoners under the Due Process Clause. Moreover, the parties have cited no statute or regulation, and the Court has found none, in which the State establishes a protected liberty interest in the right to safe transportation. Even if Divine Allah asserted a liberty interest based on the fact that he was restrained with handcuffs while being transported in an unsafe van, neither the degree nor duration of this restraint appear to be significant—lasting only as long as his journey to and from St. Agnes Hospital. Accordingly, this restraint does not amount to a Due Process violation.[63]

### 3. Clearly Established Law

■■■ The parties have not cited—nor has the Court found—a single case in which either the Supreme Court or the Second Circuit has held that the failure to provide safe transportation to wheelchair-bound inmates constitutes deliberate indifference to a prisoner's serious medical need under the Eighth Amendment. However, *Gill* established that where the alleged conduct amounts to " 'more than ordinary lack of due care for a prisoner's interests or safety,' " a plaintiff's complaint states a claim under the Eighth Amendment.[64] Because I conclude that defendants' conduct states a valid claim under the Second Circuit's analysis in *Gill*, their actions constitute a violation of clearly established law.

Moreover, a reasonable defendant would have understood that his actions violated plaintiff's right to be free from cruel and unusual punishment after plaintiff first fell from his wheelchair. However, defendants' decision to duplicate their wrongdoing demonstrates complete disregard for Divine Allah's safety—conduct "which they must have understood from existing law . . . was unlawful.' "[65] Accordingly, defendants are not entitled to qualified immunity with respect to plaintiff's Eighth Amendment claim.

### B. Personal Involvement

Even if qualified immunity does not apply, defendants argue that plaintiff has failed to allege that each of the defendants were personally involved in the alleged

---

**61.** *See* Complaint ¶ 39–41.

**62.** *See id.* ¶¶ 38, 39–41.

**63.** Because plaintiff does not assert a valid cause of action under the Due Process Clause, there is no need to address defendants' claim of qualified immunity with respect to this claim.

**64.** *Gill*, 824 F.2d at 195 (citing *Bass*, 790 F.2d at 262–63).

**65.** *Anderson*, 317 F.3d at 197(quoting *Young*, 160 F.3d at 903).

deprivation. Accordingly, they argue that the Complaint must be dismissed for failing to state a claim under section 1983.

In *Johnson v. Bendheim*,[66] four wheelchair-bound inmates brought suit against two physicians, a nurse and their supervisors, alleging violations of their rights under the ADA and the Eighth Amendment. In particular, plaintiffs argued that they were denied medications and medically fitted wheelchairs, and were prescribed medications which they did not require. Such actions they alleged, were "a malicious and intentional effort to cause [them] pain and unreasonable suffering."[67] Moreover, plaintiffs alleged that despite filing grievances, defendants' conduct did not change. Defendants moved for summary judgment arguing, in part, that plaintiffs failed to allege facts sufficient to establish personal involvement by defendants.

The court dismissed the claims against those defendants whom plaintiff did not allege were personally involved.[68] However, where plaintiff alleged that a supervisory official received complaints regarding the alleged misconduct and failed to remedy it, the court denied summary judgment. In reaching this conclusion, the court held that "without more facts concerning the grievance process, and [defendant's] involvement in it," the court could not "conclude that plaintiffs [could] prove no set of facts to support their claim that [defendant] knew of the deprivation of their rights and failed to remedy the situation."[69] As a result, the court sustained claims against the supervisory official whom plaintiff alleged was personally involved.

■ Here, Divine Allah alleges sufficient facts to establish personal involvement on the part of each defendant. In particular, plaintiff alleges that Officer Ferguson was a passenger in the vehicle in which he was injured, and that he "wrapped plaintiff in a bear hug and placed him back in his wheelchair" following the incident.[70] Moreover, with respect to defendants Koenigsmann, Goord, Phillips, and DOCS, plaintiff alleges that "other prisoners in the custody of DOCS who require a wheelchair for mobility had been injured while being transported in the same manner as Divine Allah."[71] As a result, plaintiff avers that each defendant "knew or should have known that there was a foreseeable risk of serious harm [because] of the deficiencies" alleged in his Complaint.[72] Divine Allah alleges that in spite of this knowledge, defendants "failed to remedy this manifestly dangerous situation by providing appropriate training and equipment" and "continue to provide for the transport of wheelchair-using prisoners in an unsafe van."[73] Based on these allegation, I cannot conclude that plaintiff can prove no set of facts that would establish that defendants were each personally involved. Therefore, plaintiff may proceed against each of the named defendants on his section 1983 claim.

## C. ADA and Rehabilitation Act Claims

Plaintiff argues that defendants' "failure to provide safe transportation to and from

66. *Johnson v. Bendheim*, No. 00 Civ. 720, 2001 WL 799569 (S.D.N.Y. July 13, 2001).

67. *Id.* at *3.

68. *Id.* at *6.

69. *Id.*

70. Complaint ¶ 35.

71. *Id.* ¶ 38.

72. *Id.* ¶ 46.

73. *Id.* ¶¶ 30, 39–41.

outside medical providers ... [constitutes] discriminat[ion] against qualified individuals with disabilities" in violation of both the ADA and the Rehabilitation Act.[74] Defendants contend that the Eleventh Amendment bars federal suits for any kind of relief against the State, as well as its agencies and entities, in the absence of State consent.

### 1. Applying the ADA and Rehabilitation Act to Prisons

■ Courts within this Circuit have consistently held that prisons fall within the ADA and the Rehabilitation Act definition of the term 'public entity.' In *Garcia v. State Univ. of N.Y. Health Sciences Ctr.*,[75] the Second Circuit held that Congress limited State abrogation of sovereign immunity under the ADA to those instances where a plaintiff establishes that the alleged violation was motivated by discriminatory animus based on his disability.[76] The court also noted that while suits against government entities are permitted under the ADA, "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against State officials."[77] The court further held that although Congress intended the acceptance of federal funds to constitute a waiver of sovereign immunity under the Rehabilitation Act, the court would not construe the acceptance of such funds as such a waiver. "As is the case with the waiver of any constitutional right, an effective waiver of sovereign immunity requires an 'intentional relinquishment or abandonment of a known right or privilege.' "[78] Finding that the State of New York had

not expressly waived its sovereign immunity by accepting federal funds, the court only dismissed plaintiff's claim against the State under the Rehabilitation Act.

■ Plaintiff has brought claims against defendants here in both their individual and official capacities. Because the ADA and Rehabilitation Act do not provide for liability against individual defendants, plaintiff's claims under these statutes are dismissed against defendants Goord, Phillips, Ferguson and Koenigsmann. Moreover, because New York State has not abrogated its sovereign immunity under the Rehabilitation Act, plaintiff's claim under this statute is dismissed as well. However, plaintiff's allegations with respect to DOCS are sufficient to establish a violation of the ADA. Plaintiff alleges that DOCS knew or should have known of the dangers wheelchair-bound prisoners are exposed to when they are transported in an unsafe vehicle. Despite this knowledge, plaintiff contends that DOCS failed to remedy the unsafe transportation conditions by providing training, supervision or new equipment to prison personnel. This failure, plaintiff argues, was "motivated by ill will or animus towards prisoners with disabilities who require a wheelchair for mobility" because "prisoners who do not require a wheelchair for mobility are transported to outside medical providers in a safe manner."[79] As a result, defendants' motion to dismiss plaintiff's ADA claim against DOCS is denied.

### 2. Scope of the ADA

Defendants also argue that even if the ADA applies to prisons, plaintiff fails to

---

74. *Id.* ¶¶ 56, 59.

75. 280 F.3d 98 (2d Cir.2001).

76. *See id.* at 112.

77. *Id.* at 107.

78. *Id.* at 114 (quoting *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 628, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999)).

79. Complaint ¶¶ 31, 43.

show how by reason of his disability, he was excluded from participating in a prison program. Indeed, defendants argue that the provision of special transportation in a wheelchair accessible van to obtain medical care at an outside facility demonstrates how plaintiff's special needs were recognized and met.

In *Carrasquillo v. City of New York*,[80] the court addressed the scope of the ADA. There, plaintiff brought suit against DOCS employees when he sustained injuries during a bus accident. Plaintiff alleged that his rights under the ADA were violated when, following the accident, he was placed in a housing unit that was located far from prison services, thereby forcing him to walk great distances and causing him extreme pain.[81]

In finding that plaintiff's ADA claim was not actionable, the court noted that "[w]hen an ADA claim does not state a plaintiff was excluded from a prison service or program because of his disability, it must be dismissed."[82] Because plaintiff did not "allege that he was prevented altogether from accessing" the library and prison programs, the court dismissed his ADA claim.[83]

The Second Circuit has instructed courts to "use basic statutory construction rules" when interpreting statutes.[84] Therefore, a court "'must give the words used their common meaning, absent a clearly expressed manifestation of con-

trary intent.'"[85] In addition, a court "'must look to the statute as a whole and construct an interpretation that comports with its primary purpose.'"[86] Most importantly, it is the court's duty to "'give effect ... to every clause and word of a statute.'"[87]

Here, defendants rely on *Carrasquillo* for the proposition that plaintiff can only maintain an ADA claim where he has been entirely precluded from participating in an activity based on his disability. Defendants wrongly presume that the service Divine Allah is being provided with is transportation. Instead, the service in question here is medical care from an outside facility. The ADA allows for recovery where plaintiff "is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability."[88] If defendants are right, the phrase "being denied the benefits of some service, program, or activity by reason of his or her disability" would be rendered wholly superfluous.[89] Although plaintiff is not wholly precluded from participating in this service, if he is at risk of incurring serious injuries each time he attempts to take advantage of outside medical attention, surely he is being denied the *benefits* of this service. The plain language of the ADA demonstrate that the statute was designed to ensure that disabled persons are neither denied access to, nor the *bene-*

80. 324 F.Supp.2d 428 (S.D.N.Y.2004).

81. *See id.* at 441.

82. *Id.* at 443.

83. *Id.*

84. *United States v. Kennedy*, 233 F.3d 157, 160 (2d Cir.2000).

85. *Id.* at 160–61 (quoting *United States v. Demerritt*, 196 F.3d 138, 141 (2d Cir.1999)).

86. *Id.* at 162 (quoting *Connecticut v. United States Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir.2000)).

87. *TRW Inc., v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001).

88. 42 U.S.C. § 12132.

89. *Id.*

*fits of* services based on their disability. Accordingly, plaintiff's rights under the ADA may have been violated by defendants' failure to provide him with the benefits of outside medical services.

## V. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's Due Process, and Rehabilitation Act claims are granted. However, plaintiff may proceed on his Eighth Amendment claim. Finally, defendants' motion to dismiss plaintiff's claim under the ADA is granted with respect to defendants Goord, Phillips, Koenigsmann, and Ferguson and denied with respect to DOCS. The Clerk is directed to close this motion [# 13 on the docket]. A conference is scheduled for 4:30 p.m. on June 1, 2005, in Courtroom 15C.

SO ORDERED.